UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAOMING LIU, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 23-1914 (RBW) |
| v. | ) |
| | ) |
| MERRICK GARLAND, in his official capacity as the Attorney General of the United States, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

The plaintiffs—Haoming Liu and Xihan Tian—bring this civil action against the defendants—Merrick B. Garland, in his official capacity as Attorney General of the United States; Antony J. Blinken, in his official capacity as Secretary of State for the Department of State; Rena Bitter, in her official capacity as Assistant Secretary for the Bureau of Consular Affairs at the Department of State; Alejandro Mayorkas, in his official capacity as Secretary of the Department of Homeland Security ("DHS"); Holly Waeger Monster, in her official capacity as Consul General of the U.S. Embassy in Calgary, Canada; and "Does 1-10," who are "the consular and other officials employed by the U.S. Department of State who are responsible for nonimmigrant visas at the U.S. Consulate in Calgary, Canada"—pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 706(1). See Plaintiffs' Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 6–13, 67, 78–79, ECF No. 1. Currently pending before the Court is the defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1)

1

and 12(b)(6). See Motion to Dismiss and Memorandum in Support Thereof ("Defs.' Mot.") at 1, ECF No. 5. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendants' motion.

## I. BACKGROUND

**A.  Statutory Background**

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, foreign workers engaged in specialty occupations may temporarily work for employers in the United States on a nonimmigrant visa called an H-1B visa. See 8 C.F.R. § 101(a)(15)(H)(i)(b). A specialty occupation requires both "theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor" and the "attainment of a bachelor's degree or higher in a specific specialty, or its equivalent[.]" 8 C.F.R. § 214(i)(1).

The H-1B visa process consists of three steps: first, an employer must request "a certification from the Department of Labor that it has filed a labor condition application in the occupational specialty in which the alien[] will be employed." Sinha v. Blinken, No. 20-cv-2814 (DLF), 2021 WL 4476749, at *1 (D.D.C. Sept. 30, 2021) (alteration in original) (quoting 8 C.F.R. § 214.2(h)(4)(i)(B)(1)). Next, the employer must file an I-129 petition with the United States Citizenship and Immigration Services ("USCIS") "for review of the services or training and for determination of the alien's eligibility for classification as a temporary employee or trainee." Id. (quoting 8 C.F.R. § 214.2(h)(1)(i)). Lastly, the petitioner must complete "the actual visa application through the Department of State by applying at his local embassy or consulate,"

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' Opposition to Defendants' Motion to Dismiss and Memorandum in Support Thereof ("Pls.' Opp'n"), ECF No. 7; (2) the Defendants' Reply in Support of Motion to Dismiss ("Defs.' Reply"), ECF No. 10; (3) the Notice of Supplemental Authority, ECF No. 11; and (4) the Plaintiff[s'] Response to Defendants' Notice of Supplemental Authority, ECF No. 13.

which "typically includes an in-person interview that results in a grant or denial of the visa application." Id.; see 8 C.F.R. § 214.2(h)(2).

The consular officer "must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a).  A consular officer may refuse to issue a visa under 8 C.F.R. § 221(g), which provides that no visa shall be issued to a noncitizen if it appears that the noncitizen "(1) is ineligible to receive a visa . . . (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa." 8 U.S.C. § 1201(g).

**B.     Factual Background**

The following allegations are derived from the plaintiffs' Complaint, unless otherwise specified.  The plaintiffs are allegedly "citizens of China who have long studied and worked in the United States in lawful nonimmigrant status." Compl. ¶ 1.  "They were both [allegedly] in valid H-1B status when they departed the [United States] to appear for visa stamping in Canada, after which they expected to return to their respective employment [in the United States]." Id.  However, "[o]n April 17, 2023, [the plaintiffs allegedly] attended [their] visa interview[s] at the U.S. Consulate in Calgary, Canada[,]" and at the "conclusion of [their] interview[s] [their] respective consular officers allegedly] gave [them] a 221(g)-refusal notice[.]" Id. ¶ 33, 44.  The plaintiffs allege that they "have now been stranded abroad unable to return to their employment in the [United States]." Id. ¶ 2.  "They are [allegedly] suffering professional and personal harm from the delayed visa adjudication[.]" Id.

More specifically, "[a]side from harm to his professional progression and career goals, the delay in visa processing has had . . . a significant financial impact on Plaintiff Liu." Id. ¶ 39. He alleges that he "has been on unpaid leave since May 31[, 2023,] losing $7,000 per month in

3

income[,]" "is currently paying $5,000 per month for[ a] hotel, car rental, and food[,]" and "is at risk of losing his employment since his employer does not allow its employees to be on unpaid leave for more than 90 days." Id.  Plaintiff Tian alleges that "[w]hile waiting in Canada for her visa to be issued, [her] mother [allegedly] had a serious medical emergency that forced [Plaintiff Tian] to travel back to China[.]" Id. ¶ 50.  She alleges that she "is now working remotely which means she has to work a reverse schedule to be on the U.S. time zone.  This[, she contends,] is damaging her health and well-being . . . [and s]he also does not know [how] much longer this remote arrangement can continue and she worries she will lose her employment altogether." Id. ¶ 52.

C.     Procedural Background

The plaintiffs filed their petition for mandamus and complaint on July 1, 2023.  See Compl. at 1.  On October 5, 2023, the defendants filed their motion to dismiss.  See Defs.' Mot. at 1.  The plaintiffs filed their opposition on November 17, 2023, see Pls.' Opp'n at 1, and the defendants filed their reply on December 11, 2023, see Defs.' Reply at 1.

## II.     STANDARDS OF REVIEW

A.     Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377,

4

the plaintiffs bear the burden of establishing that the Court has subject-matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

"In deciding a [Rule] 12(b)(1) motion, the [C]ourt need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff[s] the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a [Rule] 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (first and second alterations in original) (internal quotation marks omitted) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990)).

**B.      Rule 12(b)(6)**

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff[s] plead

factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff[s], who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff[s] if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.   ANALYSIS

The defendants seek to dismiss the plaintiffs' Complaint on three grounds. First, the defendants claim that the plaintiffs "name a host of officials that cannot provide [the p]laintiffs the[ir] sought-after relief." Defs.' Mot. at 1. Second, the defendants argue that "consular decisions of the sort at issue here are immune from review under the consular non-reviewability doctrine[.]" Id. Third, the defendants claim that "even were this case otherwise properly before the Court, the consular officer's pace of re-adjudicating the visa application at issue is not

unreasonable as a matter of law under the factors identified in Telecommunications Research & Action Center ('TRAC') v. FCC, 750 F.2d 70, 79 (D.C. Cir. 1984)[.]" Defs.' Mot. at 1.

In response, the plaintiffs first claim that they "[n]amed the [p]roper [d]efendants[,]" as each defendant "play[s] a role in visa processing and/or the background checks necessary for consular officers to make a final decision on visa applications." Pls.' Opp'n at 4. Furthermore, the plaintiffs claim that "[c]onsular [n]onreviewability is [i]napplicable to this [c]ase[,]" as indicated by the fact that the defendants' "argument has been overwhelmingly rejected in this district." Id. at 7. Finally, the plaintiffs claim that "[o]n the [m]erits, [t]he [d]elay [in processing their immigration petitions] is [c]learly [u]nreasonable." Id. at 19. The Court will address each of the defendants' arguments in turn.

A.      **Whether the Plaintiffs Have Named Improper Defendants**

As an initial matter, the defendants assert that the plaintiffs "name a host of officials that cannot provide [the p]laintiffs the[ir] sought-after relief." Defs.' Mot. at 1. More specifically, the defendants claim that the Secretary of the DHS, the Attorney General, the Secretary of State, and the Assistant Secretary for the Bureau of Consular Affairs at the Department of State "should be dismissed either because they have no role in adjudicating the [visa a]pplications or because they have completed their role in the process." Id. at 4. In response, the plaintiffs claim that they "[n]amed the [p]roper [d]efendants[,]" as each defendant "play[s] a role in visa processing and/or the background checks necessary for consular officers to make a final decision on visa applications." Pls.' Opp'n at 4.

Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that the plaintiffs "must establish that they have standing to sue." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (quoting Raines v. Byrd, 521 U.S. 811,

7

818 (1997)).  To satisfy the constitutional requirement for standing, the plaintiffs must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" Ark Initiative v. Tidwell, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting Lujan, 504 U.S. at 560–61).  "[B]ecause 'standing is not dispensed in gross,' [the plaintiffs] must 'demonstrate standing for each claim [they] seek[] to press' against each defendant, and 'for each form of relief sought[.]'" Magruder v. Cap. One, Nat'l Ass'n, 540 F. Supp. 3d 1, 7 (D.D.C. 2021) (internal citations omitted) (first quoting Town of Chester v. N.Y. v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017); then quoting Daimler Chrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006); and then quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 185 (2000)).

With respect to the Secretary of the DHS, all parties appear to "agree that DHS and USCIS have completed their initial duties with respect to the adjudication of [the p]laintiffs' visa petitions and that no action with respect to [the p]laintiffs' visas is currently pending before either department." Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 9 (D.D.C. 2022); see Defs.' Mot. at 4; Compl. ¶¶ 40, 53.  "Rather, [the p]laintiffs' petitions are pending adjudication before consular officers in the U.S. Embassy in [Calgary, Canada], and the Court is unaware of any mechanism through which DHS or USCIS can exert authority over the timing of that process." Id.  "Thus, with respect to USCIS, DHS, and the officials who lead them, there is no relief that the Court could order that would remedy [the p]laintiffs' injury—that is, the Embassy's delay in adjudicating [the p]laintiffs' visas." Id. (emphasis omitted).  Accordingly, the Court must grant the defendants' motion to dismiss Alejandro Mayorkas in his official capacity as the Secretary of Homeland Security for lack of standing.  See Fakhimi v. Dep't of

State, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023) (holding that the plaintiff lacked standing against the DHS and its Secretary because they played no ongoing role in the delay of visa processing).

As to the Attorney General, the defendants correctly note that the plaintiffs' Complaint contains "no factual allegations concerning the Department of Justice . . . other than noting [it has] certain roles in administering the immigration laws . . . and, at most, stating suspicions that [it has] an additional role here."  Defs.' Mot. at 4; see Compl. ¶ 8 ("Defendant Merrick B. Garland is the Attorney General of the Untied States.  Pursuant, inter alia, to 8 U.S.C. § 1103, he is charged with controlling the determination of all issues of law pertaining to immigration and with representing the United States of America in various legal matters.").  Thus, the plaintiffs do "not state facts to show how officials from the Department of Justice . . . have any involvement in the remaining steps of [the plaintiffs'] visa processing."  Rahimian v. Blinken, No. 22-cv-785 (BAH), 2023 WL 143644, at *10 n.5 (D.D.C. Jan. 10, 2023).  "As with [the plaintiffs'] claims against the [Secretary of the DHS], [the] claims against Department of Justice . . . [must therefore] be dismissed as moot."  Id.  Accordingly, the Court must grant the defendants' motion to dismiss Merrick Garland in his official capacity as the Attorney General of the United States for lack of standing.

Finally, with respect to both Department of State officials—viz., the Secretary of State and the Assistant Secretary for the Bureau of Consular Affairs—the defendants correctly acknowledge that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  "But [the p]laintiffs do not seek to have [their]

visa adjudication revised; rather, they seek to have the adjudication completed." Hajizadeh v. Blinken, No. 23-cv-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024). "As numerous courts in this [D]istrict have acknowledged, decisions on the merits are distinct from decisions about timing." Id. And crucially, "nothing . . . precludes the Secretary [of State or the Assistant Secretary for the Bureau of Consular Affairs] . . . from directing consular officers to conclude . . . matter[s] presented to [them] within a reasonable time." Id. (omissions and second and third alteration in original) (quoting Al-Gharaway, 617 F. Supp. 3d at 10). Thus, because the Department of State officials "could play a role in the pace of visa adjudications, an order from [the Court] directing [them] to move quickly would likely redress [the p]laintiffs' harms." Id. Accordingly, the Court will deny the defendants' motion to dismiss the Department of State officials for lack of standing.[2]

---

[2] The defendants also raise two non-standing threshold challenges: (1) that the doctrine of consular non-reviewability bars the plaintiffs' claims and (2) that the plaintiffs fail to identify a discrete action that the defendants were obligated to, but did not, take. See Defs.' Mot. at 6–9. More specifically, the defendants contend that the consular officials have already rendered a final decision on the plaintiffs' visa applications and, as such, there is no clear, non-discretionary duty to re-adjudicate their visa applications. Moreover, the defendants assert that "the consular non-reviewability doctrine shields a consular official's [final] decision to issue or withhold a visa from judicial review." Motevali v. Blinken, No. 23-cv-2133 (RC), 2024 WL 3580937, at *4 (D.D.C. July 30, 2024) (internal quotation marks omitted); see Defs.' Mot. at 6. Until recently, the Court would be inclined to reject the defendants' challenges. Indeed, "courts [in this District] have consistently held that where, as here, a visa 'application is still undergoing administrative processing,' the State Department's 'decision is not final' 'even where a refusal has been relayed.'" Id. (quoting Ghadami v. U.S. Dep't of Homeland Sec., No. 19-cv-397, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020)). "Put another way, any [p]laintiff with an application in administrative processing has not yet received a final decision." Id. (alteration in original) (internal quotation marks omitted).

However, the Circuit's recent unpublished decision in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), calls these prior decisions into question. More specifically, "[i]n Karimova, the [Circuit] explained that once a consular official refuses a visa application, the visa has been 'officially refused.'" Motevali, 2024 WL 3580937, at *4 (quoting Karimova, 2024 WL 3517852, at *4). "That is so even if the consular officer simultaneously chooses to place the application in administrative processing[.]" Id. "Applied here, Karimova thus suggests that once '[a] consular officer reviewed [the plaintiffs'] application[s], interviewed [them], and ruled that no visa would be granted,' [the plaintiffs'] visa application[s] [were] 'officially refused' notwithstanding [their] later placement in administrative proceeding." Id. (quoting Karimova, 2024 WL 3517852, at *4). However, given that the Circuit's decision is unpublished, and "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition," D.C. Cir. R. 36(e)(2), the Court need not conclusively determine to what extent Karimova undermines prior decisions. "That is because, as illustrated below, [the p]laintiffs' claims fail on their merits in any event." Motevali, 2024 WL 3580937, at *4; see Baan Rao, 985 F.3d at 1029 (noting that the consular nonreviewability doctrine "is not a limit on [a federal court's] subject matter jurisdiction as it goes to [a court's] willingness, not [its] power, to hear these cases").

10

B.     **Whether the Plaintiffs Have Stated a Plausible Claim of Unreasonable Delay**

On the merits, the defendants argue that the plaintiffs have "failed to state a claim because any delay [in processing their petitions] is not unreasonable as a matter of law." Defs.' Mot. at 9. The plaintiffs assert, however, that the defendants "have unreasonably failed to adjudicate the[ir] visa applications within a reasonable amount of time, in dereliction of their non-discretionary duties." Compl. ¶ 5.

The plaintiffs' "claims under the APA and the Mandamus Act share the same standards for obtaining relief." Hajizadeh, 2024 WL 3638336, at *4. "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 79). "Courts in this [C]ircuit consider six factors (the so-called 'TRAC factors') when evaluating unreasonable-delay claims:"

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Motevali v. Blinken, No. 23-cv-2133 (RC), 2024 WL 3580937, at *6 (D.D.C. July 30, 2024). "While not 'ironclad,' the TRAC factors provide 'useful guidance in assessing claims of agency delay.'" Hajizadeh, 2024 WL 3638336, at *4 (quoting In re Core Commc'ns, Inc., 531 F.3d at 855). "The first and fourth factors are the most important in the visa context." Id. (quoting Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023)). Of significant importance, courts in this Circuit have consistently noted that "application of the TRAC factors

11

is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." Bega v. Jaddou, No. 22-cv-2171, 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022), aff'd sub nom. Da Costa v. Immig. Inv. Program Off., 80 F.4th 330 (D.C. Cir. 2023). Applying the TRAC factors here, the Court concludes that the plaintiffs have failed to state a claim on which relief can be granted.

    1. **TRAC Factors One & Two**

"The first and most important factor is that 'the time agencies take to make decisions must be governed by a rule of reason.'" In re Core Commc'ns, Inc., 531 F.3d at 855 (quoting TRAC, 750 F.2d at 80). This factor is most commonly analyzed in tandem with the second factor, which provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[.]" Fakhimi v. Dep't of State, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *7 (D.D.C. Oct. 23, 2023); see Hajizadeh, 2024 WL 3638336, at *4 ("The first two factors—requiring agencies to follow 'a rule of reason' related to their timeliness, and the influence of a congressionally imposed timeline—are typically considered together." (quoting Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020)).

The plaintiffs suggest that there is a congressional timetable based on 8 U.S.C. § 1571(b), see Pls.' Opp'n at 23, which provides:

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

However, the plaintiffs concede that this language is "merely precatory," and not binding. Compl. ¶ 69; see Hajizadeh, 2024 WL 3638336, at *5 ("[A]s [the p]laintiffs acknowledge, [§ 1571(b)'s] language is merely precatory and not binding."). "Absent a congressionally

12

supplied yardstick, courts typically turn to case law as a guide." Sarlak v. Pompeo, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." Ahmadi v. Scharpf, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting Rahman v. Blinken, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). "Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable." Motevali, 2024 WL 3580937, at *6. "And indeed, recently, the [District of Columbia] Circuit found that a delay of four-and-one half years was not unreasonable." Id. (citing Da Costa, 80 F.4th at 342).

Here, the plaintiffs' visa applications have been delayed for approximately sixteen months. See Compl. ¶¶ 33, 44 (noting that the plaintiffs' applications were initially denied on April 17, 2023). Accordingly, in light of "the overwhelming trend within this [C]ircuit[,]" the Court must conclude that the defendants' "delay of approximately [sixteen] months is not unreasonable."[3] Motevali, 2024 WL 3580937, at *7. In other words, the first two factors, considered together, favor the defendants.

### 2. TRAC Factor Four

"The fourth TRAC factor, which is 'the effect of expediting delayed action on agency activities of a higher or competing priority,' is particularly important in the visa context[.]" Hajizadeh, 2024 WL 3638336, at *5 (quoting Da Costa, 80 F.4th at 342). "Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would

---

[3] The plaintiffs make much of the fact that there is allegedly a "difference in processing times for nonimmigrant versus []immigrant visas." Pls.' Opp'n at 20. Thus, the plaintiffs assert that "[c]aselaw finding years long delay for immigrant visas reasonable simply is not applicable to nonimmigrant visas[.]" Id. However, the plaintiffs fail to cite any case law which states that a sixteen-month delay in the H-1B context is unreasonable. See generally Pls.' Opp'n. Furthermore, as the foregoing analysis makes clear, courts in this jurisdiction have typically only "found that immigration delays in excess of five, six, [or] seven years [to be] unreasonable." Ahmadi, 2024 WL 551542, at *5. Given that the delay here falls well short of that range, the Court must reject the plaintiffs' assertion.

move the petitioner to 'the head of the queue' and 'simply move[] all others back one space and produce[] no net gain.'" Motevali, 2024 WL 3580937, at *8 (alterations in original) (quoting In re Barr Lab'ys, Inc., 930 F.2d 72, 75–76 (D.C. Cir. 1991)). "In fact, the [District of Columbia] Circuit 'has refused to grant relief, even [when] all the other facts considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" Id. (alterations in original) (quoting Milligan, 502 F. Supp. 3d at 319)).

Here, as both parties appear to acknowledge, "[c]ompelling agency action on [the plaintiffs'] visa application[s] would 'impose offsetting burdens on equally worthy' applicants by effectively putting [the plaintiffs] 'at the head of the queue,' thereby 'mov[ing] all others back one space and produc[ing] no net gain[.]'" Id. (sixth and seventh alterations in original) (quoting In re Barr Lab'ys, Inc., 930 F.2d at 73, 75); see also Defs.' Mot. at 14 (arguing that the fourth factor "weighs heavily in [the d]efendants' favor as [the p]laintiffs ask this Court to move the application here ahead of other pending applications"); Pls.' Opp'n at 26–27 ("[T]he Department of State routinely prioritizes some applications over others, consistent with the immigration priorities of each administration. . . . Thus, even if [the plaintiffs'] applications were processed ahead of others, it would be justified by the current policies of the administration."). Nonetheless, the plaintiffs assert that their petition should be "processed ahead of others, [as] it [is] justified by the current policies of the administration[,]" Pls.' Opp'n at 26–27—viz., the United States' alleged need for highly skilled employees. "But this argument ignores that a court order directing [the defendants] to process [the plaintiffs'] application would still put [them] ahead in the queue of those similarly situated." Desai v. U.S. Citizenship & Immigr. Servs., No. 20-cv-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021). In other words, "granting

14

[the p]laintiffs their requested relief would require the State Department to 'reorder[] [its] priorities' in a case where the 'agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way.'" Motevali, 2024 WL 3580937, at *8 (alterations and omission in original) (quoting In re Barr Lab'ys, 930 F.2d at 76). "This, the [District of Columbia] Circuit has admonished, is something that courts should not do." Id. Accordingly, for the foregoing reasons, the Court finds that the fourth TRAC factor weighs in the defendants' favor.

### 3. TRAC Factors Three & Five

"The third and fifth factors overlap[,]" requiring the Court to consider "the impact on human health and welfare and economic harm, [as well as] the nature and extent of the interests prejudiced by the delay." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Here, the plaintiffs have alleged—and the defendants do not contest—personal and financial costs, including "immense emotional distress from the delay," Pls.' Opp'n at 26, and incurring "an enormous amount on application fees, travel, and foregone professional opportunities[,]" id. at 25. Thus, the third and fifth TRAC factors weigh in the plaintiffs' favor. "However, without more facts suggesting otherwise, these harms[, standing alone,] do not threaten [the p]laintiffs' physical health and wellbeing in a manner compelling enough to overcome [the defendants'] advantage on the more important factors." Hajizadeh, 2024 WL 3638336, at *6; see id. (finding that allegations of "severe emotional distress" and significant financial costs "spent on visa-related expenses" did "not threaten [the p]laintiffs' physical health and wellbeing in a manner compelling enough to overcome [the defendant's] advantage on the more important factors"); Da Costa, 80 F.4th at 345 (concluding that the third and fifth TRAC factors did not favor the plaintiffs where "they d[id] not, for example, allege that they [were] unable to access electricity, water, food, or shelter").

15

4. **TRAC Factor Six**

"The final TRAC factor considers whether the agency's bad faith caused the delay." Sawahreh v. United States Dep't of State, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). The plaintiffs' Complaint "does not allege that a decision on [their] application was delayed intentionally or was the result of any impropriety." Id.; see generally Compl. "Therefore, 'the good faith of the agency in addressing the delay weighs against equitable relief.'" Sawahreh, 630 F. Supp. 3d at 164 (quoting Milligan, 502 F. Supp. 3d at 319).

After weighing the TRAC factors, the Court must conclude that the plaintiffs have not plausibly alleged that the delay in adjudicating their visas is unreasonable. More specifically, although "[t]his delay has concededly harmed [the plaintiffs], [ ] the rule of reason supplied by the caselaw, judicial deference to agency priority-setting, and the absence of bad faith all suggest that the delay is not yet unreasonable." Id. Accordingly, although the Court is not unsympathetic to the plaintiffs' situation, the Court must grant the defendants' motion to dismiss the plaintiffs' APA and Mandamus Act claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendants' motion to dismiss.

**SO ORDERED** this 23rd day of August, 2024.

REGGIE B. WALTON
United States District Judge